UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| ROBERT F. JEPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 12-11226-WGY |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, as Indenture Trustee | ) | |
| for American Home Mortgage | ) | |
| Investment Trust 2005-2, | ) | |
| Mortgage Backed Notes, Series | ) | |
| 2005-2, and HOMEWARD | ) | |
| RESIDENTIAL, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

MEMORANDUM AND ORDER

YOUNG, D.J.                                    September 18, 2013


I.   **INTRODUCTION**

     Under Massachusetts law, a person in possession of, and

holding record title to, a property subject to the adverse claim

of another may bring an action under the state's try title

statute to resolve the dispute.  In the process of adjudicating

a try title claim between the above captioned parties, this

Court held that the try title statute allowed a mortgagor to

bring an action against a purported mortgagee who had initiated

foreclosure procedures.  Recently, in a related case, the First

1

Circuit ruled that such an action cannot lie.  As a result, and despite a split in the lower state courts over whether a mortgagor can, in fact, bring such an action, this Court must follow the First Circuit and dismiss this action.

Because the try title statute is such a valuable tool effectively and efficiently to resolve mortgage disputes, however, this Court discusses the disputed case law surrounding the scope of the try title statute and considers the benefits provided by such a procedure.

## II.  PROCEDURAL BACKGROUND

On April 18, 2012, pursuant to Massachusetts General Laws chapter 240, sections 1 through 5, Robert F. Jepson ("Jepson") filed a try title petition in the Massachusetts Land Court (the "Land Court").  Notice Removal, Ex. A, Pet. Try Title Pursuant G.L. C.240, S.1-5, ECF No. 1-A.  In it, Jepson alleged that the purported assignment of a mortgage, which was originally executed by him to the Mortgage Electronic Registration Systems, Inc. ("MERS"), to Deutsche Bank National Trust Company ("Deutsche Bank") was "fraudulent, invalid, void and/or legally inoperative."  Id. at 2.  Deutsche Bank timely removed in early July.[1]  Notice Removal 1, ECF No. 1.

---

[1] While the try title action was filed in April, Deutsche Bank was not served until June 12, 2012, and thus removal on July 9, 2012, was proper because less than thirty days had

Within a week of removal, Deutsche Bank filed a motion to dismiss, arguing that because Jepson had not yet been foreclosed upon, Deutsche Bank's interests, as mortgagee, and Jepson's interests, as mortgagor, were "complementary," and thus not adverse, as required by the try title statute.  Def. Deutsche Bank Nat'l Trust Co. Indenture Tr. Am. Home Mortg. Backed Notes, Series 2005-2, Mem. Law Support Mot. Dismiss Pl.'s. Compl. 7-8, ECF No. 3 (citing <u>Bevilacqua</u> v. <u>Rodriguez</u>, 460 Mass. 762, 775 (2011)); Def. Deutsche Bank Nat'l Trust Co. Indenture Tr. Am. Home Mortg. Backed Notes, Series 2005-2, Mot. Dismiss Pl.'s. Compl., ECF No. 2.  In response, Jepson argued, <u>inter alia</u>, that because he "explicitly reject[ed] the notion that a mortgagor-mortgagee relationship exists between Jepson and Deutsche Bank," the parties interests were not, in fact, complementary, but were instead adverse.[2]  Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp.") 12, ECF No. 8.  In August, Deutsche Bank submitted a reply memorandum addressing several arguments Jepson raised in

---

elapsed since receipt of service.  <u>See</u> 28 U.S.C. § 1446(b); Notice Removal 1, ECF No. 1.

[2] In his response, Jepson also requested that this Court grant a motion to amend the petition which was filed with, but not granted by, the Land Court before the action was removed to federal court.  Pl.'s Resp. 2, 19.  These parties included MERS and Homeward Residential, Inc. ("Homeward Residential"), both of whom moved to dismiss Jepson's petition.  <u>See</u> Homeward Residential Inc's Mot. Dismiss Pl.'s Pet., ECF No. 16; MERS's Mot. Dismiss Pl.'s Pet., ECF No. 19.

his response.[3] Def. Deutsche Bank Nat'l Trust Co. Indenture Tr.
Am. Home Mortg. Backed Notes, Series 2005-2 Reply Mem. Supp.
Mot. Dismiss Pl.'s Compl. ("Def.'s Reply"), ECF No. 12.

After a motion hearing held on September 19, 2012, this
Court entered an unpublished interlocutory order denying
Deutsche Bank's motion to dismiss.  Jepson v. Deutsche Bank
Nat'l Trust Co., No. 12-11226-WGY, 2012 WL 4341061 (D. Mass.
Sept. 20, 2012).  This Court held that as per the Massachusetts
Supreme Judicial Court's (the "Supreme Judicial Court") ruling
in Bevilacqua v. Rodriguez, 460 Mass. 762, a mortgagor and
mortgagee's interests are generally complementary, but "[o]nce
the mortgagee exercises its right to foreclose, the claims are
no longer complementary, and the parties may be adverse."
Jepson, 2012 WL 4341061, at *1.  Since Deutsche Bank "admits
twice initiating foreclosure proceedings," the two parties were
adverse, and a try title action could lie.[4]  Id.

---

[3] Jepson and Deutsche Bank sparred over several issues not
germane to this motion to dismiss, including: (1) Deutsche
Bank's alleged failure to comply with the requirements of Local
Rule 7.1, Pl.'s Resp. 6; Def.'s Reply 1; and (2) whether Jepson
had standing to challenge Deutsche Bank's status as the current
holder of his note, Pl.'s Resp. 11; Def.'s Reply 6.  Both
parties also provided further briefing on whether Jepson and
Deutsche Bank were adverse for the purposes of the try title
statute.  See Pl.'s Resp. 8; Def.'s Reply 4.

[4] Along with denying Deutsche Bank's motion, this Court
denied Homeward Residential's motion to dismiss and granted
MERS's motion to dismiss.  Jepson, 2012 WL 4341061, at *1.

On October 10, 2012, Deutsche Bank and Homeward
Residential, Inc. ("Homeward Residential") answered Jepson's
complaint.  Deutsche Bank Nat'l Trust Co. Indenture Tr. Am. Home
Mortg. Inv. Trust 2005-2, Mortg. Backed Notes, Series 2005-2,
Homeward Residential Inc.'s Answer Pl.'s Compl., ECF No. 33.  A
one-day bench was held on January 28, 2013, in order to
determine the record title of the property in question.  <u>See</u>
Trial Tr. vol. 1, 5:20-22, Jan. 28, 2013, ECF No. 54.

Before this Court could issue findings of fact and
conclusions of law in accordance with Federal Rule of Civil
Procedure 52(a), however, Deutsche Bank and Homeward Residential
sought reconsideration of the Court's order denying their
earlier motions to dismiss.  Def. Deutsche Bank Nat'l Trust Co.
Indenture Tr. Am. Home Mortg. Inv. Trust 2005-2, Mortg. Backed
Notes, Series 2005-2, Homeward Residential Inc.'s Mot. Recons.
("Recons. Mot."), ECF No. 68; Def. Deutsche Bank Nat'l Trust Co.
Indenture Tr. Am. Home Mortg. Inv. Trust 2005-2, Mortg. Backed
Notes, Series 2005-2, Homeward Residential Inc.'s Mem. Law Supp.
Their Mot. Recons., ECF No. 69.  Deutsche Bank and Home
Residential argued that the July 1, 2013, decision of the First
Circuit in <u>Lemelson</u> v. <u>U.S. Bank National Ass'n.</u>, 721 F.3d 18
(2013), represented an "intervening change in the law that
operates to overrule this Court['s] prior interlocutory order."
Recons. Mot. 1.  In his reply, Jepson argues that <u>Lemelson</u> and

5

the instant case are factually distinguishable.  Pl./Pet'r's

Opp'n Resp'ts/Def.'s Mot. Recons., 2, ECF. No. 74.

## III. ANALYSIS

### A.   The Try Title Statutory Framework

Massachusetts General Laws chapter 240, section 1 (the "try

title statute") provides that:

> If the record title of land is clouded by an adverse claim,
> or by the possibility thereof, a person in possession of
> such land claiming an estate of freehold therein . . . may
> file a petition in the land court stating his interest,
> describing the land, the claims and the possible adverse
> claimants so far as known to him, and praying that such
> claimants may be summoned to show cause why they should not
> bring an action to try such claim.

Mass. Gen. Laws ch. 240, § 1.  An action under the try title

statute does not conclusively resolve the disputed claim, but

rather "[a] successful petition filed under the try title

statute results only in a judgment requiring a party with a

claim to the subject property to come forward and try their

title, or otherwise be barred." Varian v. Bank of N.Y. Mellon,

No. 12 MISC 462971(GHP), 2013 WL 4537421, at *1 n.1 (Mass. Land

Ct. Aug. 23, 2013) (Piper, J.).  In practice, however, the

defendant in a try title case usually files a declaratory

judgment claiming title as a counterclaim, and the courts will

combine both claims into a single action to determine title.

See Cistercian Order of Strict Observance in Mass., Inc. v.

Estate of Burnett, No. 07 MISC 354916 HMG, 2013 WL 3776300, at

*3 (Mass. Land Ct. July 12, 2013) (Grossman, J.) (stating that the Land Court has "treated an appropriately-filed counterclaim as complying with the statute['s requirement to bring an action] without the need to file a separate action").  Said differently, the try title statute provides a procedural vehicle to ensure that title claims are resolved quickly before a competent court.

Such a vehicle is not, however, always available to all litigants.  In Bevilacqua, the Supreme Judicial Court clarified the two necessary conditions that must be met before a claim may lie.  First, the petitioner must establish two jurisdictional facts: (1) that he or she was a "person in possession" of the disputed property, Bevilacqua, 460 Mass. at 767 (quoting Mass. Gen. Laws ch. 240, § 1) (internal quotation marks omitted); and (2) that he or she holds "'record title' to the land in question," id. (citing Blanchard v. Lowell, 177 Mass. 501, 504 (1901); Arnold v. Reed, 162 Mass. 438, 440-41 (1894)).  Second, the parties must be adverse.  Id. at 775-76.  Adverseness in this context means something more than the mere fact that the parties' "economic interests may diverge."  Id. at 776.  Rather, because "a mortgage, by its nature, necessarily implies the simultaneous existence of two separate but complementary claims to the property that do not survive the mortgage or each other," id. at 775, a "litigant who asserts that he or she is the holder of a mortgage necessarily asserts that the mortgage continues to

exist and that the mortgagor's claims to the property remain valid," id. at 775-76.  Under those circumstances, the claims brought by the mortgagee against the mortgagor would, by definition, be complementary, not adverse.  See Varian, 2013 WL 4537421, at *3 ("[A] mortgagee (or one standing in the mortgagee's shoes) may not use the try title statute to compel a mortgagor to try its title.").

While the Supreme Judicial Court is clear that mortgagees cannot bring a try title action, lower state courts are divided on whether mortgagors can bring such a claim.  In Abate v. Freemont Investment & Loan, No. 12 MISC 464855(RBF), 2012 WL 6115613 (Mass. Land Ct. Dec. 10, 2012) (Foster, J.), one session of the Land Court held that they cannot.  Instead, the Abate court suggested that try title actions may be brought only by the mortgagee, and even then, only after a foreclosure has occurred.  See id. at *4 ("A try title claim to challenge a mortgagee's title only arises after the plaintiff's equity of redemption has been foreclosed upon.  It is only upon a foreclosure that the mortgagee claims that it has eliminated the mortgagor's equity of redemption and now holds a title in the property superior to the mortgagor's.").

Recently, however, another session of the Land Court took a different tack.  In Varian v. Bank of New York Mellon, No. 12 MISC 462971(GHP), 2013 WL 4537421, Justice Piper recognized an

8

important conceptual difference between an action brought by a mortgagor and an action brought by a mortgagee.  A mortgagee "as a matter of law and logic, ha[s] to admit the existence of the subject mortgage, admit he stood before the court as the mortgagee, and simultaneously allege that the defendant . . . was the mortgagor."  Id. at *5.  A mortgagor, however, may allege that the purported mortgagee is actually "a stranger to the title."  Id. ("Admitting that [the mortgagors] have granted a mortgage to some party does not prevent them from arguing that [the purported mortgagee] is not that party.").

    In the procedural posture required by a motion to dismiss, where the plaintiff's factual allegations must be assumed to be true, such uncertainty as to the holder of the mortgage would, in fact, be sufficiently adverse for the purposes of the try title statute. [5]  See id. ("Here, [the purported mortgagee's] argument is that the court should dismiss this action because the [mortgagors] and [purported mortgagee] hold complementary title.  But this assumes [the purported mortgagee] is in fact the 'mortgagee,' and this is disputed at the very core of the [mortgagors'] complaint.").  Under such an interpretation, which

---

[5] The Varian court went on to note that "[a]n interpretation of the try title statute that requires the [mortgagors] to suffer a foreclosure to take place before contesting the ability to foreclose is strange indeed, and certainly not the conclusion compelled by Bevilacqua."  2013 WL 4537421, at *4.

this Court finds persuasive, a mortgagor's pre-foreclosure try title action could lie.

## B.    The First Circuit's Decision in Lemelson

In Lemelson, the First Circuit held that a mortgagor's claim against a purported mortgagee was not sufficiently adverse to permit an action under the try title statute.  See 721 F.3d at 24.  Employing reasoning very similar to that adopted by the Abate court, the First Circuit held that "[u]ncertainty as to who holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's claim of equitable title."[6]  Id. at 24 n.7.  In a footnote, the First Circuit stated that it was "aware that [this Court's previous opinion denying Deutsche Bank's motion to dismiss in this case] could be read as reaching a different outcome.  It is of course subject to this opinion."  Id. at 24 n.8.

In accordance with the First Circuit's clear direction, this Court will thus enter an order consistent with Lemelson, and will dismiss this action.

## C.    Benefits of the Try Title Statute

---

[6] In its analysis, the Varian court rejected this conclusion, stating that while "[t]he First Circuit in Lemelson in a footnote says that '[u]ncertainty as to who holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's claim of equitable title[,]' [i]t is not clear why this should be the case, and there is no state appellate decisional law the court is aware of to compel that conclusion." 2013 WL 4537421, at *5 (second alteration in original) (citation omitted) (quoting Lemelson, 721 F.3d at 24 n.7).

While this Court is, of course, bound by the First Circuit's ruling in <u>Lemelson</u>, the try title statute is nonetheless an important procedural mechanism that can efficiently resolve foreclosure disputes, and barring litigants in federal court from its benefits is most unfortunate.  In this section, the Court details several advantages of the statute.

### 1. Prompt Resolution of Contested Title Claims Promotes Market Efficiency

A successful petition filed pursuant to the try title statute requires that a defendant adverse claimant "bring an action to try such [disputed] title," Mass. Gen. Laws ch. 240, § 3, often in the form of a declaratory judgment, <u>Varian</u>, 2013 WL 4537421, at *1 n.1.  Such a mechanism provides a formal channel for a prompt resolution of clouded title claims, which, by allowing properties to go back on the market, promotes economic efficiency.  <u>See</u> <u>Culhane</u> v. <u>Aurora Loan Servs. of Neb.</u>, 826 F. Supp. 2d 352, 360 (D. Mass. 2011) ("The public has an interest in ensuring the liquidity of the mortgage market."); <u>cf.</u> Alex M. Johnson, Jr., <u>Critiquing the Foreclosure Process: An Economic Approach Based on the Paradigmatic Norms of Bankruptcy</u>, 79 Va. L. Rev. 959, 996 (1993) (concluding that the "foreclosure process works quite well and quite efficiently").

This happens in three ways.  First, by resolving disputed foreclosure claims, the try title statute allows housing markets

to "[']clear excess inventories,' which would arguably 'restore
. . . financial stability.'"  Aleatra P. Williams, Foreclosing
Foreclosure: Escaping the Yawning Abyss of the Deep Mortgage and
Housing Crisis, 7 Nw. J.L. & Soc. Pol'y 455, 501 (2012) (quoting
Edward Vincent Murphy, Cong. Research Serv., RL 34653, Economic
Analysis of a Mortgage Foreclosure Moratorium i (2008)).
Second, insomuch as the residential market remains overinflated,
foreclosures can help "reset" prices to more sustainable levels.
See Andrea J. Boyack, Community Collateral Damage: A Question of
Priorities, 43 Loy. U. Chi. L.J. 53, 65 (2011) ("[T]he downward
price pressure of foreclosure sales may actually help rather
than hurt the housing market as a whole.").  But see Katie
Jones, Cong. Research Service, R40210, Preserving Homeownership:
Foreclosure Prevention Initiatives i (2012) (arguing that "the
increase in foreclosures may destabilize the housing market,
which could in turn negatively impact the economy as a whole").
Finally, a more efficient foreclosure process may increase the
prices fetched by mortgagors at foreclosure sales, thus
promoting their own welfare.  Cf. Aurora Loan Servs., Inc. v.
Craddieth, 442 F.3d 1018, 1028 (7th Cir. 2006) (observing that
conditions making foreclosures uncertain "might even depress the
prices paid at foreclosure sales, thus increasing the size of
the deficiency judgments entered against mortgagors, by reducing
the expected value of bidding at such a sale").

## 2. Try Title Claims Involve Limited Discovery and Fact Finding

Another advantage of the try title statute is that cases, at least in this Court's experience, can be resolved with limited discovery and fact finding.  In order to bring a try title claim, a plaintiff must "establish its title through the [principles] articulated in [U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 (2011)]."  Bank of N.Y. Mellon Corp. v. Wain, No. 12 MISC 459002(AHS), 2012 WL 5475849, at *5 (Mass. Land Ct. Nov. 9, 2012) (Sands, J.).  Such principles require that the party seeking to establish ownership show a clear chain of title.  See Ibanez, 458 Mass. at 648 (holding that a mortgagee may exercise the power of sale only if it was the assignee at the time of the notice of sale and foreclosure sale); Wain, 2012 WL 5475849, at *6 (same).  Title can be established via appropriate official records, and the court is not required to credit "speculation" of improper assignments.  See Conti v. Wells Fargo Bank, N.A., No. 11 MISC 456834(AHS), 2012 WL 2094375, at *2-3 (Mass. Land Ct. June 11, 2012) (Sands, J.).  Expert testimony may be admitted in establishing such title.  See, e.g., Allison v. Nyberg, No. O5 Misc 309537(KFS), 2012 WL 1493755, at *5 (Mass. Land Ct. Nov. 8, 2012) (Scheier, C.J.).

Establishing such a chain of title is generally not burdensome.  In this action, for example, the Court held a one-

day bench trial, at which time it admitted ten exhibits and heard testimony from one witness.  See Trial Tr. vol. 1 2:10-21. Similarly, other sessions in this district have similarly determined chains of title pursuant to try title actions with limited, if any, formal discovery.  See, e.g., Foregger v. Residential Credit Solutions, Inc., No. 12-11914-FDS, 2013 WL 3208596, at *4, *11 (D. Mass. June 21, 2013) (Saylor, J.). Thus, the try title statute provides a mechanism for resolving mortgage disputes that is sensitive to the need for judicial and litigant economy.

### 3. Early Title Certainty Promotes Mediation, Arbitration, and Settlement Activities

The try title statute provides for the pre-foreclosure adjudication of chain-of-title claims.  See Brewster v. Seeger, 173 Mass. 281, 282-83 (1899) (Holmes, J.); Varian, 2013 WL 4537421, at *4.  Thus, by clarifying any outstanding legal claims before foreclosure proceedings are instituted, the try title statute may promote mediation, arbitration, and settlement activities.

As a response to the foreclosure crisis, several states have instituted pre-foreclosure mediation programs.  See, e.g., Frank S. Alexander et al., Legislative Responses to the Foreclosure Crisis in Nonjudicial Foreclosure States, 31 Rev. Banking & Fin. L. 341, 374 (2011); Elizabeth Renuart, Toward a

14

More Equitable Balance: Homeowner and Purchaser Tensions in Non-Judicial Foreclosure States, 24 Loy. Consumer L. Rev. 562, 575-76 (2012).  Massachusetts does not have a state-wide statute, but some municipalities, most notably Springfield, have adopted regulations requiring pre-foreclosure mediation.  See Easthampton Sav. Bank v. City of Springfield, 874 F. Supp. 2d 25, 34-35 (D. Mass. 2012) (Ponsor, J.) (upholding regulations against various constitutional challenges).  Other commentators have similarly promoted arbitration as a way of resolving such disputes without resorting to formal foreclosure proceedings.  See, e.g., R. Wilson Freyermuth, Foreclosure by Arbitration?, 37 Pepp. L. Rev. 459 (2010).  While a complete verdict on the effectiveness of these programs remains outstanding, early results indicate that they are helpful in allowing both parties to reach mutually acceptable settlements.  See, e.g., Karen Tokarz et al., Foreclosure Mediation Programs: A Crucial and Effective Response by States, Cities, and Courts to the Foreclosure Crisis, St. Louis Bar J., Summer 2012, at 28.

    Regardless of form, the certainty over legal obligations provided by a try title action promotes settlement by giving both parties a clear understanding of where they would stand should they go through foreclosure proceedings -- specifically, whether the Ibanez title-chain requirements would be met.  Cf. Robert H. Mnookin & Lewis Kornhausert, Bargaining in the Shadow

of the Law: The Case of Divorce, 88 Yale L.J. 950, 968 (1979)
("[T]he outcome that the law will impose if no agreement is
reached gives each [litigant] certain bargaining chips –– an
endowment of sorts"); cf. also William A. Blancato & C. Allen
Gibson, Jr., Controlling Your Own Destiny: You Can With
Mediation, Disp. Resol. J., Aug-Oct 2008, at 14, 17 (discussing
the benefits of post-litigation mediation); Rebecca Hollander-
Blumoff, Note, Getting to "Guilty": Plea Bargaining as
Negotiation, 2 Harv. Negot. L. Rev. 115, 119 (1997) (discussing,
in the context of plea bargaining, how legal entitlements affect
negotiation by "constraining" the negotiator and "mandating
specific consequences" for the parties if an agreement is not
struck).  But cf. Orna Rabinovich-Einy, Escaping the Shadow of
Malpractice Law, Law & Contemp. Probs., Summer 2011, at 241, 252
("When ADR is employed post-litigation, the likelihood of
reaching such [favorable] outcomes is significantly
diminished.").  Such negotiation may result in lower costs for
litigants and, more certainly, greater litigant satisfaction.
See, e.g., Jacqueline M. Nolan-Haley, Informed Consent in
Mediation: A Guiding Principle for Truly Educated
Decisionmaking, 74 Notre Dame L. Rev. 775, 775 n.1 (1999).

**IV.  CONCLUSION**

   Because "this Court [is] an inferior court within the First
Circuit," it must, of course, apply and respect the holdings of

16

the appellate court.  Leavitt v. SW & B Constr. Co., 766 F.

Supp. 2d 263, 282 (D. Me. 2011).  Accordingly, the Defendants'

motion for reconsideration, ECF No. 68, is GRANTED and the

Defendants' motion to dismiss, ECF No. 2, is now GRANTED and

this case is dismissed without prejudice.[7]

Ordinarily, when faced with a controlling question of state

law where, as here, there is divided and contradictory state

court authority, this Court would consider certifying the

question to the Supreme Judicial Court pursuant to Massachusetts

Supreme Judicial Court Rule 1:03.  In this case, however, such a

maneuver would smack of attempting an "end run" around binding

precedent.  In proper deference to the First Circuit's ruling,

this Court declines to certify.  Jepson must thus appeal to the

First Circuit and ask it to certify the question to the Supreme

Judicial Court in light of the rapidly developing decisional law

in the Massachusetts Land Court.

Unfortunately, until the Supreme Judicial Court speaks to

this important issue of state law, the try title statute will be

treated in one way in certain sessions of the Massachusetts Land

Court and exactly the opposite in federal court.  We shall thus

endure the unseemly spectacle of homeowners scrambling to devise

_____

[7] As the dismissal in Lemelson v. U.S. Bank Nat'l Assoc.,
No. 12-10677-PBS, 2012 WL 4527527, at *2 (D. Mass Sept. 28,
2012) (Saris, J.) was without prejudice to challenging the
foreclosure in state court, id., this Court follows Lemelson's
lead.

a procedural gimmick to stay in the state court while banks
swiftly remove to federal court where the same state law now
favors them.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE